IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| RUSTY BOBBY RUSSELL and | ) | CASE NO. 05-82837-H3-13 |
| VICTORIA LEE RUSSELL, | ) | |
| | ) | |
| Debtors | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

The court heard Parker Trailer Sales, Inc.'s Motion to Dismiss Case (Docket No. 32) and confirmation of the Debtors' Amended Chapter 13 Plan (Docket No. 27). Parker Trailer Sales, Inc. ("Parker") filed an Objection to confirmation of Debtors' Amended Chapter 13 Plan (Docket No. 31) and the court has reviewed the docket, file, pleadings therein, evidence and the arguments of counsel. The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the Motion to Dismiss Case and denying confirmation of the Debtors' Amended Plan. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

1. Rusty and Victoria Russell ("Debtors") jointly filed a voluntary petition under Chapter 13 of the Bankruptcy Code on October 11, 2005. Docket No. 1.

2. Debtors filed a Chapter 13 Plan which was subsequently amended. Docket Nos. 9 and 27.

3. Parker filed a motion to dismiss on the basis that the Debtors' did not file the above captioned Chapter 13 bankruptcy proceeding in good faith. Docket No. 32. Parker also filed an objection to the Debtors' plan on the basis that the plan was not proposed in good faith pursuant to § 1325(a)(3) and that all of the Debtors' projected disposable income would not be applied to make plan payments pursuant to § 1325(b)(1)(B).

4. Sometime in February 1997, Rusty Russell ("Russell") entered into a consignment agreement with Parker pursuant to which Russell would sell Parker Trailer's trailers. Parker filed a complaint in state court against Russell for failure to turn over sales proceeds, and obtained a Judgment against him on October 7, 2002. Parker deposed Russell on September 5, 2002 regarding his assets and Parker obtained a turnover order for stock certificates and funds belonging to Russell. On December 9, 2002, a constable went to Russell's sales lot to execute the turnover order. He spoke with Russell but was unsuccessful in obtaining the stock certificates or any funds.

5. One day after Parker's attempt to execute on its judgment, December 10, 2002, Russell filed a Chapter 7 bankruptcy proceeding, individually and d/b/a Southwest Trailer and Hitch,

in the Eastern District of Texas, Sherman Division.  Parker filed an adversary proceeding (Adversary No. 03-4070) related to that chapter 7 case and, on September 30, 2005, obtained a Judgment from the bankruptcy court declaring part of the debt, in the amount of $64,513.10, to be nondischargeable.  This court takes judicial notice of the docket and pleadings in Case No. 02-46374 (Chapter 7), Eastern District of Texas, Sherman Division and the related adversary proceeding, Adversary No. 03-4070.

   6.  On October 10, 2005, Russell filed a Notice of Appeal in Adversary No. 03-4070, appealing the Judgment declaring part of the debt to Parker nondischargeable.  One day later, on October 11, 2005, while his Chapter 7 bankruptcy proceeding was still pending in the Eastern District of Texas, Russell and his wife filed the instant Southern District of Texas Chapter 13 case.  This Chapter 13 proceeding was filed four days prior to the effective date of the 2005 amendments to the Bankruptcy Code, October 15, 2005.  The 2005 amendments adopt more stringent requirements for individuals seeking to proceed with the bankruptcy process.  One of the motivating factors for the enactment of the amendments was to discourage and deter opportunistic personal filings and abuse.  *See Bankruptcy Abuse Prevention and Consumer Protection Act of 2005: Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256*, H.R. Rep. No. 109-31, Pt. 1, 109th Cong., 1st

3

Sess. (2005).

       7.   Russell testified that, when he and his wife filed their Chapter 13 proceeding, he was aware that his Chapter 7 bankruptcy case was still pending and that he had not yet received a discharge in that case. After filing the instant case, Russell's attorney in Adversary Proceeding 03-4070, pending in the Eastern District of Texas, filed a Notice of Withdrawal of Appeal on October 19, 2005. Ultimately Adversary Proceeding 03-4070 was closed on December 20, 2005. Russell received a Chapter 7 discharge of his other debts from the bankruptcy court in the Eastern District of Texas on February 25, 2006.

       8.   Debtors' amended plan provides for monthly payments of $250 to the Trustee for a period of thirty-six (36) months. The secured debt of $25,000 to Denton ATCU and the secured debt of $12,310 to the IRS will be dealt with by Debtors' abandonment of all interest in the collateral (as to the IRS, this appears to be an anticipated refund) and the surrender of possession pursuant to 11 U.S.C. 1325(a)(C).[1]

---

[1] Denton ATCU has a $25,000 claim which is secured by two certificates of deposit. Debtors and Denton ATCU entered into an Agreed Order lifting the automatic stay to allow Denton ATCU to pursue its state law remedies. Docket No. 23. The Debtors' originally scheduled the claim of the IRS as an unsecured priority claim in the amount of $15,000. The IRS filed a proof of claim in the amount of $26,528.66, with $1,772.54 as priority, $12,446.12 as unsecured, and $12,310 as secured. 26 U.S.C. § 6402(a) allows the IRS to credit a tax refund owed to an individual against any liability for taxes owed by that individual to the IRS. Section 553 of the Bankruptcy Code provides for rights of setoff. Section 506(a) provides that a creditor holding a valid right of setoff is to be treated as the holder of a secured claim to the extent of the amount of the setoff.

4

The plan provides for payment in full of all priority claims.[2] The general unsecured claimants, including Parker, will receive 1.93% of their claims. Docket No. 27 and Docket No. 38, Summary of Chapter 13 Plan.

      9. Parker's unsecured claim in the amount of $64,513.10 is over 65% of the total unsecured debts listed by Debtors.[3] Debtor, Russell, testified that he filed this Chapter 13 proceeding as a result of his debt to the IRS, and that the debt to Parker was not discharged in his Chapter 7 proceeding. The court finds that the low return to unsecured creditors, 1.93%, and the 36 month duration of the plan reflect the Debtors' attempts to pay a minimal amount over a short period of time to unsecured creditors.

      10. Parker alleges that Debtors' Schedules and Statement of Financial Affairs ("SOFA") contain inaccurate and false information. Debtors' original SOFA gives estimated joint annual income for the years 2003 to 2005. Docket No. 10. Russell testified that he did not know if the estimated figure for 2005, $56,735, in the original SOFA was based on twelve

---

[2] The plan lists the IRS and Law Office of David W. Barry as the only priority claims, each in the amount of $2,000. Since Debtors propose to pay the State of Texas directly for past due child support in the amount of $8,000, the priority claim of the State of Texas is not provided for in the proposed plan.

[3] Upon review of Debtors' schedules, Debtors' list unsecured debt in the amount of $103,000, of which Parker's claim of $64,513.10 results in it being approximately 66% of the total unsecured debt.

5

months (for the entire year) or nine months (from January 2005 until October 2005, when Debtors' filed their Chapter 13 case). Debtors' amended their SOFA on March 13, 2006 and the estimated annual figures for all three years remained the same.  Docket No. 28.  When questioned about the figures on the amended SOFA, Debtor then testified that the figures must have been an estimate for the entire year.

   11.   Question 11 of the original and Amended SOFA requires a list of all financial accounts which were closed, sold, or otherwise transferred within one year immediately preceding the commencement of the case.  On both the original and amended SOFA, Debtors indicated they had none.  However, Russell testified that two bank accounts, one with Wells Fargo and one with Northstar, were closed in 2005 within one year of filing Debtors' bankruptcy.  Additionally, he testified that his wife, Victoria, closed her separate Northstar account during the pendency of this bankruptcy.

   12.   The SOFA includes a section which requires identification of the nature, location and name of any business, partnership, or corporation in which Debtors have an interest.  Question 18.  Debtors listed five entities on their original SOFA.  The Debtors' Amended SOFA includes the five entities initially listed as well as thirteen new ones.  Parker alleges that Debtors' amendment to their SOFA was only subsequent to

6

Parker's uncovering the inaccuracies.  Although Parker did not submit further evidence on Debtors' motivation for filing the amendment, the court notes that the creditors' meeting was held prior to the filing of the amendments.  Russell did not offer an explanation for not listing all 18 business entities on the original SOFA.

13.  Schedule B (Personal Property) reflects that on the date of filing, October 11, 2005, $1,025 was the value Debtors placed on their personal checking and savings accounts.  Docket No. 10.  A Summary of Debtors' Bank Records reflects that five days later the Wells Fargo Checking Account in Russell's name individually, as of October 16, 2005, had a balance of $15,163.20.  Parker Exhibit No. 9.

14.  The Summary also reflects the amount of monthly deposits and withdrawals on this Wells Fargo account as of the monthly bank statement dates.  It appears that there were a number of months where large deposits were made to Debtors' account.  There were also large withdrawals for the same periods.[4]

---

[4] In reference to the monthly statement dated October 16, 2005, the summary reflects a total of $27,967.57 in deposits and $18,654.05 in withdrawals.  As to the November 17, 2005 statement date, $18,428.96 in deposits were made and $25,139.09 in withdrawals were made.  Deposits of $18,336.06 and withdrawals of $20,224.38 were made per the statement dated December 16, 2005.

15. Russell testified that the large deposits and withdrawals that were reflected on Debtors' monthly bank statements could be the result of various causes. He said he and his wife had multiple accounts at Wells Fargo and they transferred money back and forth among the accounts. Thus, he thought many of the deposits shown on the various accounts were funds transferred from their other accounts and did not reflect additional income. According to Russell, the deposits could also be attributed to his salary and bonuses, which amounts had increased substantially due to an increase in trailer sales.

16. Russell testified that some of the deposits were money they received from their parents, and that some deposits on other accounts were from sales or money received from operating some of their businesses, such as AMA Absolute Mobile Accessories. Withdrawals from some of the accounts he claimed were to be payment for the cost of goods as well as general operating expenses of Debtors' businesses. However, Debtors' Schedule and Amended Schedule I, Current Income of Individual Debtor(s), and Schedule and Amended Schedule J, Current Expenditures of Individual Debtor(s), do not reflect any of these purported sources of income or list of expenses. Docket Nos. 10 and 27.

17.  Russell testified that another explanation for the deposits and withdrawals was his practice of cashing co-workers checks.  Russell testified that he worked as a supervising manager for Big Tex Trailer, another company in the trailer sales industry.  He testified that he would deposit co-workers' paychecks into his personal bank account, withdraw cash and then give his co-workers cash in the amount of their paychecks.  He testified that the employees of Big Tex were paid every Friday.  He thought most of his co-workers cashed their paychecks at stores or check cashing facilities, if not through him.  He testified that he started doing this in March 2004 and continued until February 2006, when he was fired by Big Tex.  There was no additional evidence to corroborate this testimony.

18.  The court notes that the Summary of Debtors' Bank Accounts includes and summarizes thirteen different bank accounts.  Some of these accounts are in Debtors' names, individually and jointly.  Some are in the names of various businesses Debtors have an interest in, such as Diamond B Truck Accessories, Mary Kay, DB Trucking, and AMA Absolute Mobile Accessories.  There are five Wells Fargo accounts, two Denton ATCU accounts, two Washington Mutual accounts, two Northstar accounts, and two Hibernia accounts.  Debtors' schedules only refer to three accounts, Wells Fargo, Northstar and Denton ATCU, with a combined value of $1,025.

19. The court did not find Russell to be credible. His explanations were conjectural. No documentary evidence was submitted in support of Debtors' contentions. Further, Russell did not identify the source of any of the deposits with specificity. Additionally, no credible testimony was given as to the purpose for the large withdrawals and where that money went. Russell only surmised several generic explanations for the bank account figures.

20. Amended Schedule I indicates that since March 16, 2006, Russell has been working as a Loan Officer with Texas Lending. Com. The company makes initial and refinanced residential housing loans. Russell testified that he makes $10 per hour. He testified that upon the closing of one of his loans, he would receive a 10% commission on the revenue generated for the company. Debtors did not list the commissions as an additional source of income on Amended Schedule I. Russell testified that these were not included as commissions were unpredictable.

21. Debtors have failed to provide the Chapter 13 Trustee and the court with complete and accurate information on which to base a determination of whether Debtors' plan meets the requirements for confirmation. The court has considered the totality of the circumstances in this case, including but not limited to: Russell's filing his Chapter 7 bankruptcy petition in

the Eastern District of Texas one day after Parker attempted to execute on its state court judgment; Debtors' filing the instant Chapter 13 bankruptcy petition one day after filing a Notice of Appeal of the non-dischargeability judgment rendered in favor of Parker by the Bankruptcy Court of the Eastern District of Texas; Debtors' knowledge of and the pendency of two bankruptcy cases simultaneously; Debtors' failure to file complete and accurate schedules and SOFA, including a failure to list all business interests, income, and bank accounts; the Debtors' proposed low percentage (approximately 1.93%) distribution to unsecured creditors pursuant to Debtors' proposed plan; the minimal duration (36 months) of the proposed plan; and the fact that Parker's claim represents approximately two-thirds of the total amount of unsecured claims.  The court finds that Debtors have not acted in good faith in filing this Chapter 13 bankruptcy proceeding and have not proposed their plan in good faith.

22.   The court finds that the Debtors' Amended Chapter 13 Plan (Docket No. 27) does not meet the requirements for confirmation as set forth in section 1325.  The court further finds that the instant Chapter 13 case should be dismissed with prejudice.

Conclusions of Law

1.   The purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield

those who abuse the bankruptcy process in order to avoid paying their debts.  A Chapter 13 case may be dismissed for cause.  11 U.S.C. § 1307(c).  Such cause includes filing a bankruptcy petition in bad faith.  *See, e.g., Matter of Smith*, 848 F.2d 813, 816 n. 3 (7th Cir. 1988);  *In re Molitor*, 76 F.3d 218 (8th Cir. 1996).

      2.  Pursuant to section 1325(a)(3), to be entitled to confirmation, the chapter 13 plan must have been proposed in good faith and may not have been proposed by any means forbidden by law.  The determination of whether a plan was proposed in good faith is to be based on all of the circumstances of the case. See 8 *Collier on Bankruptcy* ¶ 1325.04 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005) and cases cited therein.

      3.  A good faith inquiry under § 1325(a)(3) of the Bankruptcy Code requires a careful examination of the totality of the circumstances surrounding the debtor's Chapter 13 filing. *See In re Chaffin*, 836 F.2d 215, at 217 (5th Cir. 1988).  When an objection to confirmation is filed pursuant to section 1325(b)(1) and the plan does not satisfy the full payment test of subsection 1325(b)(1)(A), subsection 1325(b)(1)(B) requires the court to determine whether the debtor has committed to the plan all of the debtor's projected disposable income for a three-year period beginning on the date the first plan payment is due.

4. No comprehensive definition of good faith exists for purposes of § 1325 and 1307. Courts must define good faith on a case by case basis. Several factors may guide the court's inquiry into good faith. These include whether there are any deficiencies or inaccuracies in debtor's schedules or plan that might amount to an attempt to mislead the court; whether payments proposed by the plan are fundamentally fair in dealing with creditors, including consideration of timing of filing, amount and proportion of debt that would not be dischargeable in a liquidation, equities of any classification; whether debtor had any improper motivation in seeking relief. *In re Chaffin*, 836 F.2d 215, 217 (5th Cir. 1988); *In re Molitor*, 76 F.3d, at 220, citing *In re LeMaire*, 898 F.2d 1346, 1349 (8th Cir. 1990) *See also*, *In re Gier*, 986 F.2d 1326 (10th Cir. 1993).

5. These factors and others constitute a totality of circumstances on which the court is to determine whether or not there has been an abuse of a provision, purpose or spirit of Chapter 13. *See In re Chaffin*, 836 F.2d 215 (5th Cir. 1988).

6. Some of the elements considered by a court in considering bad faith are the amount of the proposed payments, debtor's earning capacity, types of debt sought to be discharged, frequency with which the debtor has sought bankruptcy relief, and the motivation and sincerity of the debtor. *In re Robinson*, 987 F.2d 665 (10th Cir. 1993); *In re Fischer*, 136 B.R. 819 (D.

Alaska 1992).

7.   To answer the question of good faith or lack thereof, the court is ultimately required to determine whether there has been an abuse of the provisions, purpose, or spirit of Chapter 13.  *Matter of Smith*, 848 F.2d 813 (7th Cir. 1988); *Matter of Jones*, 119 B.R. 996 (Bankr. N.D.Ind. 1990).

8.   As a general rule, a debtor may not have two bankruptcy cases pending simultaneously.  *In re Fountain*, 142 B.R. 135 (Bankr. E.D.Va. 1992).  The entry of a discharge in a Chapter 7 proceeding does not necessarily bar a Debtor from filing a Chapter 13 proceeding.  *In re Saylors*, 869 F.2d 1434 (11th Cir. 1989).  Likewise, the fact that a debtor uses Chapter 13 to obtain discharge of a debt which would not be dischargeable in a prior Chapter 7 case is not bad faith per se.  *Matter of Chaffin*, 836 F.2d 215 (5th Cir. 1988).  However, these are factors which the court considers as part of the totality of the circumstances in determining whether the instant bankruptcy petition and/or whether the Debtors' Amended Plan is filed in good faith.

9.   Failure to file complete schedules is a willful failure to appear in proper prosecution of the case sufficient to dismiss with prejudice.  *In re Tomlin*, 105 F.3d 933 (4th Cir. 1997); *Matter of Welling*, 102 B.R. 720 (Bankr. S.D.Iowa 1989).

10.  The court concludes that the instant Chapter 13 petition was filed in bad faith, based upon the totality of the circumstances of this case, including Russell's filing his Chapter 7 bankruptcy petition in the Eastern District of Texas one day after Parker attempted to execute on its state court judgment; Debtors' filing the instant Chapter 13 bankruptcy petition one day after filing a Notice of Appeal of the non-dischargeability judgment rendered in favor of Parker by the Bankruptcy Court of the Eastern District of Texas; Debtors' knowledge of and the pendency of two bankruptcy cases simultaneously; Debtors' failure to file complete and accurate schedules and SOFA, including a failure to list all business interests, income, and bank accounts; the Debtors' proposed low percentage (approximately 1.93%) distribution to unsecured creditors pursuant to Debtors' proposed plan; the minimal duration (36 months) of the proposed plan; and the fact that Parker's claim represents approximately two-thirds of the total amount of unsecured claims.

11. Dismissal is an appropriate treatment of a Chapter 13 case filed in bad faith.  *Matter of Beauty*, 42 B.R. 655 (Bankr. E.D.La. 1984) app. dism'd, 745 F.2d 53 (5th Cir.1984).

12.  The bankruptcy court has discretion to dismiss with prejudice to the refiling of a subsequent Chapter 13 case. 11 U.S.C. §§ 105, 349(a); *In re Stathatos*, 163 B.R. 83 (N.D.Tex.

1993); *In re Jolly*, 143 B.R. 383 (E.D.Va.1992); *In re Dilley*, 125 B.R. 189 (Bankr. N.D.Ohio 1991).

13. Dismissal with prejudice to refiling for 180 days is appropriate to prevent abuse of the bankruptcy process. *In re Stathatos*, 163 B.R. 83 (N.D.Tex. 1993).

Based on the foregoing, a separate Judgment will be entered dismissing the above captioned case with prejudice to filing another case under Title 11 within 180 days after entry of the Judgment.

Signed at Houston, Texas on this 26th day of August, 2006.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE